307 Md. 1 (1986)
511 A.2d 1079
THE MARYLAND-NATIONAL CAPITAL PARK AND PLANNING COMMISSION ET AL.
v.
ELSIE CRAWFORD. THE MARYLAND-NATIONAL CAPITAL PARK AND PLANNING COMMISSION
v.
ELSIE CRAWFORD.
Nos. 110, 121, September Term, 1984.
Court of Appeals of Maryland.
July 16, 1986.
Arthur S. Drea, Jr., Gen. Counsel and D.S. Sastri, Thurman H. Rhodes, Associate Gen. Counsel, on brief, Hyattsville, for appellants.
Risselle Rosenthal, Fleisher, Gen. Counsel, Baltimore, on brief for amicus curiae State of Md. Com'n on Human Relations.
Stephen H. Sachs, Atty. Gen., Diana G. Motz, Asst. Atty. Gen., Kathryn M. Rowe, Staff Atty., Robert A. Zarnoch, Asst. Atty. Gen., Baltimore, on brief for amicus curiae State of Md.
Karl G. Feissner and John E. Beckman, Eric S. Slatkin and Feissner & Beckman, on brief, Langley Park, for appellee.
Argued before MURPHY, C.J., SMITH, ELDRIDGE, COLE, RODOWSKY, JJ., and CHARLES E. ORTH, Associate Judge of the Court of Appeals of Maryland (retired) and JAMES C. MORTON, Jr., Associate Judge of the Court of Special Appeals (retired), Specially Assigned.
ELDRIDGE, Judge.
Elsie M. Crawford brought this action for damages and injunctive relief against her employer, the Maryland-National Capital Park and Planning Commission, and three officers thereof, after she had been denied an employment transfer allegedly because of her race. She specifically grounded her action on 42 U.S.C. § 1983 and on the Maryland Constitution. The Circuit Court for Prince George's County (Bowen, J.), sitting without a jury, found that the plaintiff had been denied her Fourteenth Amendment rights and was entitled to relief under § 1983, awarded her $500 in damages, ordered the Commission to grant the transfer, and awarded counsel fees under 42 U.S.C. § 1988. The Commission appealed to the Court of Special Appeals, which affirmed the judgment of the trial court. We granted the Commission's petition for a writ of certiorari, which raised questions as to whether Mrs. Crawford properly exhausted her administrative remedies and whether she had been wrongfully discriminated against. A separate appeal concerns the counsel fees awarded by the trial court.

I.
The pertinent facts are as follows. Elsie M. Crawford is employed as a secretary, grade III, at the Maryland-National Capital Park and Planning Commission. In August 1982 she applied for a transfer to a vacant position at the same grade in the History Division of the Department of Parks and Recreation, which is a part of the Commission. Two months later a three member interview panel, chaired by the Coordinator of the History Division, interviewed Mrs. Crawford and three other applicants. The panel unanimously ranked Mrs. Crawford as first choice, followed by Nadine Callahan. The chairman of the interview panel forwarded the results of the interviewing process through the hierarchy of officials responsible for hiring. Later, the personnel manager sent Mrs. Crawford a memorandum stating that she had not been selected. Ms. Callahan was hired instead. Ms. Callahan is black, and Mrs. Crawford is white.
The Commission maintained a so-called "affirmative action plan" until December 1984. This plan grew out of charges brought in 1977 against the Commission by the Equal Employment Opportunity Commission (E.E.O.C.) on behalf of two employees. The record does not disclose the nature of these charges, but the E.E.O.C. investigated and apparently found "reasonable cause" to pursue them. The investigation yielded a "conciliation agreement" executed by the Executive Director of the Commission and by three persons at the E.E.O.C., an Equal Opportunity Specialist, a Supervisor of Compliance and an acting District Director.
The conciliation agreement formed part of the Commission's Exhibit No. 1 in the circuit court. It contains no findings as to discriminatory practices at the Commission, and expressly states that the Commission admits no violations of the law. The agreement does contain the assertion that the Commission's "change rooms" have been desegregated since 1974 and that promotional vacancy announcements are equally accessible to all employees. The gist of the agreement is a commitment on the part of the Commission to follow non-discriminatory personnel policies, and to make good faith efforts to employ minority employees in all job categories in proportion to their representation in the regional workforce by 1980. The good faith efforts were defined to include the use of annual numerical hiring goals.
By 1980 the Commission had not met its goal of proportional representation in all job categories. The E.E.O.C. reviewed the progress reported quarterly under the conciliation agreement, made an "on-site visit review," and the parties entered a four year extension agreement. This agreement bears the signatures of the Executive Director of the Commission and three persons at the E.E.O.C., including a District Director. The extension agreement contains specific numerical goals for various job categories, but its core is the following:
"Respondent agrees that until the goals for black/minority hiring and promotions mutually agreed upon by the Commission and Respondent on December 15, 1980, are met, one black/minority applicant shall be hired or promoted for each non-minority applicant who is hired or promoted for all vacant positions...."
This "one-for-one rule" provides for exceptions when no minority candidate responds to recruitment, and when the non-minority candidate is "clearly superior." The extension agreement expired in December 1984.
The record shows that the affirmative action plan shaped the decision not to grant Mrs. Crawford's transfer request, although it is not clear from the record how the transfer of an employee from one position to another in the same grade could affect the Commission's compliance with the affirmative action plan. The chairman of the interview panel discussed the requirements of the plan with hiring officials before recommending Mrs. Crawford as "clearly more qualified," and the hiring officials considered the plan's requirements before deciding to pass over Mrs. Crawford.
Upon being denied the transfer, Mrs. Crawford obtained counsel and filed an administrative grievance within the Commission, alleging that she has been denied the transfer solely because of her race. The Commission answered, speaking through Hugh Robey, Director of the Parks and Recreation Department. Mr. Robey found that the interview panel had listed Mrs. Crawford as first choice but also had considered Ms. Callahan qualified. Mr. Robey further stated that the decision to hire Ms. Callahan accorded with the terms of the Commission's affirmative action plan. Based on this conclusion, he denied the grievance. Mrs. Crawford then appealed to the Executive Director of the Commission.
While her appeal to the Executive Director was pending, and before exhausting the final stage of the administrative grievance procedure by appealing any adverse decision by the Executive Director to the Commission's Merit System Board, Mrs. Crawford filed this lawsuit in the Circuit Court for Prince George's County.[1]
Four days after Mrs. Crawford filed suit, the Executive Director issued his memorandum decision, which essentially restated the determination made earlier by Mr. Robey. Mrs. Crawford then took her final internal administrative appeal, this time to the Merit System Board of the Commission, in accordance with the Board's rules for grievances. On April 15, 1983, the Merit System Board rendered its final decision, stating as follows:
"Race was a determining factor in the non-selection of the appellant. The use of race in the selection for the position in question was not inconsistent with existing rules, practices, and policies of the Commission in the context of related case law."
The Board's rationale for this decision was that the Commission's affirmative action plan authorized, but did not require, a preference for minority candidates on a list of qualified candidates.
While the appeal to the Merit System Board was still pending, the Commission filed in the circuit court a demurrer to Mrs. Crawford's action on the ground that exhaustion of administrative remedies must occur before the court may exercise jurisdiction. The circuit court held a hearing on March 7, 1983, and subsequently overruled the demurrer. The court issued orders on April 12, 1983, directing the Commission not to alter evidence or influence potential testimony in the case. Otherwise, the court did nothing in the matter until after the Merit Board's decision.
After the Merit System Board's final decision on April 15, 1983, the defendants filed a motion raising preliminary objection, asserting that they were immune from suit. In the memoranda supporting the motion, the Commission claimed immunity from the 42 U.S.C. § 1983 action on the ground that it was a state agency and not a local government agency. With regard to the plaintiff's state law action, the Commission contended that it was entitled to sovereign immunity as a state agency under Maryland law. It was further argued that, as the actions taken by the individual defendants "were taken in their official capacity and within the scope of their public duties," the individual defendants were entitled to the same immunity as the Commission. The plaintiff responded by arguing that the Commission and its employees enjoyed no immunity from suit under 42 U.S.C. § 1983, citing Owen v. City of Independence, 445 U.S. 622, 100 S.Ct. 1398, 63 L.Ed.2d 673 (1980), and Monell v. Dept. of Soc. Serv. of City of N.Y., 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). The plaintiff further argued that any state law immunity had been waived by Code (1957, 1979 Repl.Vol, 1985 Cum.Supp.), Art. 49B, § 7(b)(1).[2] The circuit court thereafter overruled the motion raising preliminary objection.
The case was tried on June 1 and June 2, 1983. After the trial, the court delivered an oral opinion finding "that the only reason Mrs. Crawford wasn't transferred was that she was white." The court further found that the Commission's affirmative action plan contained an exception suspending the "one for one" hiring rule when one among several "qualified" applicants for a position was "clearly" more qualified than any of the others. The court found that the plaintiff fell within this exception and that, therefore, the Commission had failed to follow its own affirmative action plan. The circuit court also concluded that the defendants did not act with malice and that there was no basis for an award of punitive damages. The court determined that the plaintiff, in her action under 42 U.S.C. § 1983, was denied the equal protection of the laws, should receive an award of $500 compensatory damages, and should be transferred to the position for which she had applied.
On June 15, 1983, the court filed a mandatory injunction requiring the defendants to transfer the plaintiff Crawford to the position which she had sought. On the same date, judgment in favor of the plaintiff for $500 was entered. Finally, plaintiff's counsel was given thirty days to file a petition for counsel fees under 42 U.S.C. § 1988. The defendants on June 15, 1983, filed an order of appeal to the Court of Special Appeals from the order and judgment filed that day.
Seven days later, on June 22, 1983, the circuit court, after a hearing, assessed counsel fees under § 1988 in the amount of $24,971.10 for the representation of the plaintiff in connection with the trial. Judgment for this amount was entered. The court rejected an argument by the defendants that the order of appeal deprived the court of jurisdiction to award counsel fees, holding "that this is a collateral matter." Neither side filed an order of appeal from the circuit court's judgment for trial court attorneys' fees.
In their appeal to the Court of Special Appeals, the defendants argued (1) that the circuit court erred in not sustaining the demurrer based on the alleged failure to exhaust administrative remedies, (2) that the refusal to grant the plaintiff's application was based on the affirmative action plan and therefore did not violate the plaintiff's right to equal protection of the laws, (3) that there was no showing of intentional discrimination so as to warrant damages and injunctive relief, and (4) that the circuit court erred in awarding counsel fees after the order of appeal was filed.[3]
The Court of Special Appeals affirmed, Md.-Nat'l Cap. P. & P. Comm'n v. Crawford, 59 Md. App. 276, 475 A.2d 494 (1984). Relying upon Patsy v. Florida Board of Regents, 457 U.S. 496, 102 S.Ct. 2557, 73 L.Ed.2d 172 (1982), and several state cases applying the Patsy holding to state court actions under 42 U.S.C. § 1983, the Court of Special Appeals held that exhaustion of administrative remedies is not a prerequisite to maintaining a § 1983 action. 59 Md. App. at 290-291, 475 A.2d 494. With regard to the merits, the intermediate appellate court held that "ample evidence was adduced to permit Judge Bowen to find that the Commission misapplied its own procedures by hiring a minority applicant over a `clearly more qualified' non-minority applicant for the singular reason of race." Id. at 299, 475 A.2d 494. The appellate court also held that the plaintiff "Crawford [had] proved that appellants' discriminatory act with respect to her was deliberate and purposeful and not accidental or inadvertent." Id. at 301-302, 475 A.2d 494. The fact that the defendants may not have intended to discriminate unconstitutionally against the plaintiff was deemed "of no moment." Id. at 302, 475 A.2d 494. As to attorneys' fees, the Court of Special Appeals pointed out that the defendants' failure to appeal from the order assessing attorney's fees and the judgment for such fees resulted in the issue not being preserved for appellate review. Id. at 304, 475 A.2d 494. Nevertheless, the court went on to state that the circuit court did not err in awarding counsel fees after the order of appeal and that the amount of the fee awarded was not an abuse of discretion. Id. at 303-305, 475 A.2d 494.
The defendants then filed in this Court a petition for a writ of certiorari, raising two questions: (1) whether the decisions below concerning exhaustion of administrative remedies were erroneous; (2) whether the refusal to grant the plaintiff's transfer application was consistent with a valid affirmative action plan.
While the defendants' petition for a writ of certiorari was pending in this Court, the circuit court, upon the plaintiff's application, awarded an additional plaintiff's counsel fee of $37,384.59 for work done in connection with the proceedings in the Court of Special Appeals. The defendants filed an order of appeal from this additional counsel fee award.
Thereafter this Court granted the defendants' petition for a writ of certiorari presenting the questions concerning exhaustion of administrative remedies and the validity of the defendants' personnel action. In addition, with regard to the appeal from the $37,384.59 counsel fee award for appellate representation, this Court on its own motion issued a writ of certiorari prior to any proceedings in the Court of Special Appeals. Both cases were heard on the same day, and we shall dispose of both in this opinion.

II.
In Patsy v. Florida Board of Regents, supra, the Supreme Court flatly held as follows: "we conclude that exhaustion of state administrative remedies should not be required as a prerequisite to bringing an action pursuant to § 1983." 457 U.S. at 516, 102 S.Ct. at 2568. While Patsy involved a § 1983 action brought in a federal court, the majority of state court decisions since Patsy have taken the position that the Patsy holding is applicable to a state court § 1983 action. See, e.g., Beitel v. Board of School Com'rs of Mobile, 419 So.2d 242, 245 (Ala.App. 1982); Logan v. Southern Cal. Rapid Transit Dist., 136 Cal. App.3d 116, 124, 185 Cal. Rptr. 878 (1982); Laurel Park, Inc. v. Pac, 194 Conn. 677, 690, 485 A.2d 1272, 1279 (1984); Fetterman v. University of Conn., 192 Conn. 539, 549, 473 A.2d 1176 (1984); Marker v. Talley, 502 A.2d 972 (Del.Super. 1985); Beverly Bank v. Board of Review, 117 Ill. App.3d 656, 661, 72 Ill.Dec. 791, 453 N.E.2d 96 (1983), cert. denied, 466 U.S. 951, 104 S.Ct. 2153, 80 L.Ed.2d 539 (1984); Stratos v. Dept. of Public Welfare, 387 Mass. 312, 439 N.E.2d 778, 783 (1982); Bung's Bar & Grille, Inc. v. Florence Tp., 206 N.J. Super. 432, 502 A.2d 1198, 1216 (1985); Montalvo v. Con. Ed., 92 A.D.2d 389, 403, 460 N.Y.S.2d 784 (1983), aff'd 61 N.Y.2d 810, 473 N.Y.2d 972, 462 N.E.2d 149 (1984); O'Connors v. Helfgott, 481 A.2d 388, 391-392 (R.I. 1984); Kramer v. Horton, 125 Wis.2d 177, 371 N.W.2d 801 (Wis. Ct. App. 1985). See also Maddox v. Clac. County Sch. Dist. No. 25, 293 Ore. 27, 35, 643 P.2d 1253 (1982). A contrary position, holding that exhaustion of administrative remedies is required as a prerequisite to a state court § 1983 action, has been adopted by a few courts since Patsy. See Bartschi v. Chico Community Mem. Hosp., 137 Cal. App.3d 502, 508, 187 Cal. Rptr. 61 (1982); State ex rel. Basham v. Med. Licensing Bd., 451 N.E.2d 691, 694 (Ind. App. 1983); Snuggs v. Stanley County Dept. Public Health, 310 N.C. 739, 740, 314 S.E.2d 528 (1984).
The defendants, as well as the amici, urge us to follow the minority position. They emphasize the Maryland policy that, where pursuant to a statute an administrative remedy is provided for a particular type of case, ordinarily the administrative remedy must be invoked and exhausted before judicial relief is available. See, e.g., Bd. of Ed. for Dorchester County v. Hubbard, 305 Md. 774, 786, 506 A.2d 625 (1986); Wash. Sub. San. Comm'n v. Mitchell & Best, 303 Md. 544, 553-554, 495 A.2d 30 (1985); Comm'n On Human Rel. v. Mass Transit, 294 Md. 225, 230-233, 449 A.2d 385 (1982); Prince George's County v. Blumberg, 288 Md. 275, 283-284, 418 A.2d 1155 (1980), cert. denied, 449 U.S. 1083, 101 S.Ct. 869, 66 L.Ed.2d 808 (1981).[4]
Of course, as we recently emphasized in County Exec., Prince Geo's County v. Doe, 300 Md. 445, 454, 479 A.2d 352 (1984), "when an action is brought in a state court to enforce rights or claims under federal law, the Supremacy Clause of the United States Constitution requires that federal law and policy be applied by the state court." We went on (id. at 455, 479 A.2d 352):
"Moreover ... a state court exercising jurisdiction in a federal cause of action may not refuse to apply federal law in one particular respect where such law is deemed inconsistent with `state policy.' Instead, the entire federal substantive law is applicable. As the Supreme Court pointed out in Garrett v. Moore-McCormack Co., supra, 317 U.S. [239] at 243, 63 S.Ct. [246] at 249 [87 L.Ed. 239 (1942)] where a state court action is brought to enforce `asserted rights granted by federal law,' the state court is `required to give to [the plaintiff] the full benefit of federal law.' (Emphasis added.) The `state court [is] bound to proceed in such manner that all the substantial rights of the parties under controlling federal law would be protected.' Id. at 245, 63 S.Ct. at 251, emphasis added."
Consequently, if Congress in 42 U.S.C. § 1983 intended that exhaustion of state administrative remedies should not be a prerequisite to bringing an action under that federal statute, regardless of the judicial forum, then the "Maryland policy" concerning invocation and exhaustion of administrative remedies would be immaterial, and the Patsy holding would be fully applicable to state court § 1983 actions.[5]
The defendants and amici argue, however, that the congressional intent in § 1983, that state administrative remedies need not be invoked or exhausted, was aimed solely at federal court actions, and that Congress did not have such intent with regard to state court § 1983 actions. They contend that the legislative history and reasoning relied on by the Supreme Court in the Patsy opinion related only to federal court suits under § 1983. In the present case, we need not and do not reach this argument because there was no violation of any applicable state law primary jurisdiction or exhaustion requirement.
The defendants and amici suggest that there were three different sets of administrative remedies which Mrs. Crawford was required to invoke and exhaust before bringing an action in court: (1) the remedies afforded by the Maryland-National Capital Park and Planning Commission, including the final decision of the Merit System Board; (2) the remedies available from the federal Equal Employment Opportunity Commission; (3) the remedies available from the Maryland Human Relations Commission.[6] In our view, there was a proper exhaustion of the only administrative remedy which Mrs. Crawford may have been required to follow.

A.
The General Assembly of Maryland, in Code (1957, 1983 Repl.Vol.), Art. 28, § 2-112, mandated that the Maryland-National Capital Park and Planning Commission put into effect a merit system for almost all of its employees. The statute created a Merit System Board, set forth certain functions of the Board, and directed the adoption of "a comprehensive plan, a classification plan, and comprehensive rules and regulations governing operation of the merit system for Commission employees." (§ 2-112(c)). The rules and regulations, which were adopted pursuant to the statute, provide a grievance mechanism which culminates in an appeal to the Merit System Board. Merit System Rules and Regulations, Chs. 1700, 1800 (Jan. 1, 1977). Rule 1860 provides that employees "may appeal the Board's decision to a court of competent jurisdiction."
Mrs. Crawford invoked and ultimately exhausted the Commission's administrative grievance system. She filed an administrative grievance on December 15, 1982; she received a response on January 11, 1983; she appealed to the Executive Director on January 17, 1983; and the Executive Director rendered his decision on February 14, 1983. On February 17, 1983, Mrs. Crawford appealed to the Merit System Board, and the Board issued its final decision on April 15, 1983. Meanwhile, as previously mentioned, Mrs. Crawford filed her action in the Circuit Court for Prince George's County on February 10, 1983, before exhausting the Commission's grievance system. The defendants' argument concerning the alleged failure to exhaust administrative remedies centers upon the filing of the court suit more than two months before the final administrative decision. (Defendants' brief, pp. 14-15). According to the defendants, the circuit court erroneously "assumed jurisdiction of the case by denying the Appellants' Demurrer." (Id. at 15).
An examination of the circuit court's opinion overruling the demurrer demonstrates that the court properly applied any exhaustion requirement in its handling of the case. First, the court divided the question into two parts: (1) the right of the plaintiff to preserve her ability to prove her case and (2) the right of the plaintiff to go forward with her case. On the first point, the court considered exhibits concerning the rewriting of Commission records. The court enjoined the changing of records or alteration of testimony in orders filed on April 12, 1983. The exhaustion requirement does not apply to an order restraining the destruction or alteration of potential evidence. A court may exercise jurisdiction and grant preliminary relief pending final administrative action in order to prevent destruction of records or other irreparable injury. See Gulf Oil Corp. v. U.S. Dept. of Energy, 663 F.2d 296, 311-312 (D.C. Cir.1981) (intervening to preserve documents and records from destruction). See also National Bank of Commerce v. Marshall, 628 F.2d 474, 479 (5th Cir.1980), cert. denied, 454 U.S. 1053, 102 S.Ct. 597, 70 L.Ed.2d 589 (1981).
On the second part, i.e., whether Mrs. Crawford could go forward with her case before exhausting her administrative remedies, the circuit court stated:
"The Commission is entitled to have adequate time to answer and investigate the claims and they do assert that there is a dispute about this matter. Therefore, since this involves a constitutional question, we think it ought not to be decided on a partial record, but on a full record made over a full hearing, everybody having an opportunity to be heard."
The court declined to decide the matter on Mrs. Crawford's summary judgment motion, and trial was held more than six weeks after the Merit System Board issued its final decision on April 15, 1983. The only actions which the court took prior to this final administrative decision were filing the orders enjoining the destruction of records and alteration of evidence. Hence the plaintiff reached the exhaustion point contended for by the Commission by the time trial was held.
Moreover, where there is doubt about the necessity of exhausting administrative remedies, as in this case, one course of action which has been recognized under some circumstances is for the trial court to require exhaustion while also retaining jurisdiction of the matter. This avoids the necessity of commencing the civil action over again should the administrative remedy fail to resolve the dispute. For example, in Montgomery v. Rumsfeld, 572 F.2d 250 (9th Cir.1978), the United States Court of Appeals for the Ninth Circuit reversed the trial court's order dismissing an action. The appellate court held that where exhaustion was not a statutory jurisdictional prerequisite, and where case law was in conflict as to the necessity for exhaustion, the trial court could retain jurisdiction pending exhaustion of administrative remedies. 572 F.2d at 252-254. See Bd. of Ed. for Dorchester Co. v. Hubbard, supra, 305 Md. at 792-793, 506 A.2d 625; Offutt v. Montgomery Co. Bd. of Ed., 285 Md. 557, 562, 404 A.2d 281 (1979).
In addition, in situations like that in the present case, where there is both an administrative remedy and an independent judicial remedy (i.e., a specific judicial remedy exists other than judicial review of the administrative decision), where the administrative agency may have primary jurisdiction, and where the plaintiff invokes the judicial remedy prior to exhausting the administrative procedures, it has been held that the trial court may retain jurisdiction pending exhaustion of the administrative procedures. Bd. of Ed. for Dorchester Co. v. Hubbard, supra, 305 Md. at 792, 506 A.2d 625. See the discussion and cases reviewed in Hansen v. Norfolk & Western Ry. Co., 689 F.2d 707 (7th Cir., 1982). See also Ricci v. Chicago Mercantile Exchange, 409 U.S. 289, 93 S.Ct. 573, 34 L.Ed.2d 525 (1973). Once the administrative procedures are exhausted, the trial court may proceed; the plaintiff whose case is meritorious may be entitled to whatever relief is available under either the independent judicial action or the administrative/judicial review remedy. See, e.g., Pan American World Airways v. U.S., 371 U.S. 296, 313 n. 19, 83 S.Ct. 476, 486 n. 19, 9 L.Ed.2d 325 (1963); Hewitt-Robins v. Freight-Ways, 371 U.S. 84, 83 S.Ct. 157, 9 L.Ed.2d 142 (1962). See also Bd. of Ed. for Dorchester Co. v. Hubbard, supra, 305 Md. at 792, 506 A.2d 625.
Under the circumstances of this case, the circuit court correctly denied the defendants' demurrer; the administrative remedies afforded by the Maryland-National Capital Park and Planning Commission were fully exhausted.

B.
We now address the contention that Mrs. Crawford's complaint is really a complaint under Title VII of the 1964 Civil Rights Act, 42 U.S.C. §§ 2000e-2000e-17, and that she failed to invoke and exhaust the remedies before the federal Equal Employment Opportunity Commission. It is asserted that the E.E.O.C. had primary jurisdiction over Mrs. Crawford's complaint, and that no court could properly exercise jurisdiction over the complaint because of Mrs. Crawford's failure to seek relief from the E.E.O.C.
Title VII prohibits various forms of discrimination in employment, 42 U.S.C. §§ 2000e-2-2000e-3. It establishes the E.E.O.C., § 2000e-4, and creates an intricate administrative enforcement scheme, § 2000e-5.[7] In addition, Title VII confers jurisdiction upon the federal courts to entertain actions under that statute, as long as specified administrative procedures have been followed, 42 U.S.C. § 2000e-5(f).[8] It is undisputed that the plaintiff Crawford did not invoke any remedy which she might have had under Title VII.
The coverage of Title VII was extended to state and local government employees by § 2 of the Equal Employment Opportunity Act of 1972, Pub.L. 92-261, § 2, 86 Stat. 103, Mar. 24, 1972. Nothing in the statutory language suggests that the 1972 legislation was intended to affect remedies available to state and local government employees under 42 U.S.C. § 1983. Moreover, the legislative history of the 1972 statute makes it clear that Congress did not intend to affect the right of state and local government employees to bring § 1983 actions. The House of Representatives report on the bill which became the Equal Employment Opportunity Act of 1972 (H.R.Rep. No. 92-238, reprinted in 1972 U.S. Code Cong. & Adm.News 2137, 2154) stated:
"In establishing the applicability of Title VII to State and local employees, the Committee wishes to emphasize that the individual's right to file a civil action in his own behalf, pursuant to the Civil Rights Act of 1870 and 1871, 42 U.S.C. §§ 1981 and 1983, is in no way affected. During the floor debate surrounding the passage of Title VII of the Civil Rights Act of 1964, it was made clear that the Act was not intended to preempt existing rights under the National Labor Relations Act or the Railway Labor Act. Title VII was envisioned as an independent statutory authority meant to provide an aggrieved individual with an additional remedy to redress employment discrimination. Two recent court decisions, Young v. International Telephone and Telegraph Co., 438 F.2d 757, 3 FEP Cases 145 (3rd Cir.1971) and [Sanders] Saunders v. Dobbs House, 431 F.2d 1097 (5th Cir.1970), have affirmed this Committee's belief that the remedies available to the individual under Title VII are co-extensive with the individual's right to sue under the provisions of the Civil Rights Act of 1866, 42 U.S.C. § 1981, and that the two procedures augment each other and are not mutually exclusive. The bill, therefore, by extending jurisdiction to State and local government employees does not affect existing rights that such individuals have already been granted by previous legislation."
Relying upon the above, as well as other legislative history and numerous court decisions, the United States Court of Appeals for the Seventh Circuit recently held that a state government employee could bring a § 1983 action, to remedy a Fourteenth Amendment violation, without invoking Title VII remedies. Trigg v. Fort Wayne Community Schools, 766 F.2d 299 (7th Cir.1985). The court in Trigg stated (766 F.2d at 302):
"From the foregoing discussion, we conclude that the Fourteenth Amendment and Title VII have granted public sector employees independent rights to be free of employment discrimination. A plaintiff may sue her state government employer for violations of the Fourteenth Amendment through § 1983 and escape Title VII's comprehensive remedial scheme, even if the same facts would suggest a violation of Title VII. This holding is consistent with the great weight of authority. See Day v. Wayne County Board of Auditors, 749 F.2d 1199, 1205 (6th Cir.1984); Meyett v. Coleman, 613 F. Supp. 39 (W.D. Wis. 1985); Storey v. Board of Regents, 600 F. Supp. 838, 840 (W.D.Wis. 1985); Zewde v. Elgin Community College, 601 F. Supp. 1237, 1244-46 (N.D.Ill. 1984); Skadegaard v. Farrell, 578 F. Supp. 1209, 1218 (D.N.J. 1984); Woerner v. Brzeczek, 519 F. Supp. 517, 519 (N.D.Ill. 1981). But see Torres v. Wisconsin Department of Health and Social Services, 592 F. Supp. 922, 929-30 (E.D.Wis. 1984)."
See, e.g., Molthan v. Temple University, 778 F.2d 955, 961 (3d Cir.1985); Lowe v. City of Monrovia, 775 F.2d 998, 1011 (9th Cir.1985); Alexander v. Chicago Park Dist., 773 F.2d 850, 855-856 (7th Cir.1985), cert. denied, ___ U.S. ___, 106 S.Ct. 1492, 89 L.Ed.2d 894 (1986); Day v. Wayne County Bd. of Auditors, 749 F.2d 1199, 1205 (6th Cir.1984); Nilsen v. City of Moss Point, Miss, 701 F.2d 556, 559 (5th Cir.1983); Rivera v. City of Wichita Falls, 665 F.2d 531, 534 n. 4 (5th Cir.1982); Owens v. Rush, 654 F.2d 1370, 1377-1380 (10th Cir.1981); Strama v. City of Chicago, 617 F. Supp. 422, 426 (N.D.Ill. 1985).
We agree with the above cases, and hold that the failure to invoke Title VII remedies does not preclude a state or local government employee from maintaining in a Maryland circuit court a § 1983 action based upon an asserted violation of the Equal Protection Clause or other provision of the federal constitution.[9]

C.
The question whether Mrs. Crawford was required to file a complaint with and exhaust her remedies before the Maryland Commission on Human Relations, before bringing the present action, presents a typical primary jurisdiction issue. This Court recently summarized the applicable principles as follows (Bd. of Ed. for Dorchester Co. v. Hubbard, supra, 305 Md. at 785-786, 506 A.2d 625):
"As Judge Rodowsky recently pointed out for the Court in Wash. Sub. San. Comm'n v. Mitchell & Bell, 303 Md. 544, 561-562, 495 A.2d 30, 39 (1985), quoting in part from Md.-Nat'l Cap. P. & P. v. Wash. Nat'l Arena, 282 Md. 588, 386 A.2d 1216 (1978):
`Primary jurisdiction "is a judicially created rule designed to coordinate the allocation of functions between courts and administrative bodies." Maryland Nat'l Capital Park & Planning Comm'n v. Washington Nat'l Arena, supra, 282 Md. at 601, 386 A.2d at 1225-26. The doctrine "comes into play when a court and agency have concurrent jurisdiction over the same matter.... and there is no statutory provision to coordinate the work of the court with that of the agency." Id. at 601, 386 A.2d at 1226 (citation omitted).'
"In the situation outlined above, where the General Assembly has provided an administrative remedy and there also exists an independent judicial remedy, and no statute coordinates the two or specifies which is primary, we have ordinarily construed the pertinent enactments to require that the administrative remedy be first invoked and followed. Sec., Dept. of Hum. Res. v. Wilson, 286 Md. 639, 645, 409 A.2d 713, 717 (1979); White v. Prince George's County, 282 Md. 641, 649, 387 A.2d 260, 265 (1978), and cases there cited. On occasion, however, we have held that the administrative remedy is not primary and that resort may be had to the concurrent judicial remedy without invoking or exhausting the administrative procedures. See, e.g., Md.-Nat'l Cap. P. & P. Wash. Nat'l Arena, supra.

"Where, however, the administrative remedy is deemed to be primary, this Court has generally held that it must be pursued and exhausted before a court exercises jurisdiction to decide the controversy."
For several reasons, we do not construe the pertinent enactments of the General Assembly as precluding resort by an employee to a specific independent contractual or statutory remedy in court, such as that provided by § 1983, without first invoking the procedures before the Human Relations Commission.
The statutory provisions prohibiting discrimination in employment were added to the Human Relations Commission Article of the Code (Art. 49B, then entitled "Interracial Commission") by Ch. 717 of the Acts of 1965. Nothing in the 1965 statute, in the then existing provisions of Art. 49B, or in any subsequent enactments by the General Assembly, remotely indicates that the administrative enforcement machinery in Art. 49B must be invoked prior to pursuing a specific independent judicial remedy.
Moreover, the practical ramifications strongly suggest that the Legislature had no such intent. For example, under the position urged by the amici in this case, where an act of employment discrimination because of race, color, religion, or national origin constitutes a clear breach of an employment contract, the party discriminated against would not be able to maintain a breach of contract action in court unless he had first invoked and exhausted the time consuming and multi-step administrative procedure before the Human Relations Commission. An alleged discriminatory act prohibited by Art. 49B might also constitute a violation of a collective bargaining agreement which contains provisions for arbitration. Under the interpretation advocated by the amici, a party to the collective bargaining agreement arguably would have to invoke and exhaust the Human Relations Commission's procedures before bringing a judicial action to compel arbitration. Or, if arbitration takes place and culminates in an award, a decision by the Human Relations Commission would arguably be a condition to bringing a statutorily created judicial action to enforce the award. Unlike other situations involving the relationship between independent judicial actions and administrative proceedings (Cf. Bd. of Ed. for Dorchester Co. v. Hubbard, supra), we very much doubt that the Legislature intended such results.
In Bd. of Ed. for Dorchester Co. v. Hubbard, supra, 305 Md. at 787-793, 506 A.2d 625, in holding that the State Board of Education had primary jurisdiction to interpret the Education Article of the Code, we distinguished that case from ones such as this as follows (id. at 790-791, 506 A.2d 625):
"While administrative agencies generally may interpret statutes, as well as rule upon other legal issues, and while an agency's interpretation of a statute which it administers is entitled to weight, the paramount role of the State Board of Education in interpreting the public education law sets it apart from most administrative agencies. On the other hand, where we have held that a concurrent judicial remedy may be pursued without the necessity of invoking and exhausting a statutorily prescribed administrative remedy, the legal issue did not involve an interpretation of a law administered by the agency. See Md.-Nat'l Cap. P. & P. v. Wash. Nat'l Arena, supra, 282 Md. at 600, 386 A.2d 1216 (construction of a contract provision)."
In the case at bar, the plaintiff's action does not involve an interpretation of Art. 49B; moreover, it is not grounded upon any provision in Art. 49B. Instead, while there may be some degree of overlap, Mrs. Crawford's § 1983 action is specifically based upon the Equal Protection Clause of the Fourteenth Amendment. In this regard, the present case is more like Wash. Nat'l Arena than Hubbard.[10]
The rule of statutory construction, that ordinarily an administrative remedy must be invoked before resort to an independent judicial remedy, is in part based upon an inference from the comprehensiveness of the statutorily created administrative scheme. As stated in Sec., Dep't of Human Res. v. Wilson, 286 Md. 639, 645, 409 A.2d 713 (1979),
"when the Legislature enacts a comprehensive remedial scheme in which a claim is to be determined by an administrative agency and reviewed in an administrative appeal before judicial review is available, it establishes, as public policy, that such a procedure produces the most efficient and effective results. In order to effectuate this public policy, trial courts generally should not act until there has been compliance with the statutory comprehensive remedial scheme." (Emphasis added).
See, Bd. of Ed. for Dorchester Co. v. Hubbard, supra, 305 Md. at 787, 506 A.2d 625. In determining whether this rule of construction should apply to an employee grievance where the employee has a specific independent statutory or contractual remedy for that grievance, it is significant that the remedial scheme before the Human Relations Commission is not as comprehensive as some other administrative remedies. In Gutwein v. Easton Publishing Co., 272 Md. 563, 569-577, 325 A.2d 740 (1974), cert. denied, 420 U.S. 991, 95 S.Ct. 1427, 43 L.Ed.2d 673 (1975), holding that the remedies available from the Commission in an employment discrimination case were somewhat limited, "we note[d] that throughout its 47-year history, the Commission has seen its powers ebb and flow almost as many times as its name has been changed." 272 Md. at 575, 325 A.2d 740. Later, in National Asphalt v. Prince Geo's Co., 292 Md. 75, 437 A.2d 651 (1981), this Court held that, by enacting the employment discrimination provisions in the Human Relations Commission Article of the Code, the Legislature did not intend to preempt the field. We contrasted the administrative scheme in that Article with other statutory provisions, pointing out that the former was not as "extensive and comprehensive," and that "the matter of employment discrimination is dealt with by five relatively brief sections in Article 49B which do not comprehensively cover the entire field." 292 Md. at 79, 437 A.2d 651. The non-exclusive nature of the Human Relations Commission's jurisdiction is illustrated by Equitable Life v. State Comm'n, 290 Md. 333, 336-338, 430 A.2d 60 (1981), where we held that the Human Relations Commission and the Insurance Commissioner had concurrent jurisdiction over alleged unfair discriminatory practices by insurers, and Equitable Tr. Co. v. State Comm'n, 287 Md. 80, 86, 411 A.2d 86 (1980), where we reached a similar conclusion with regard to the Human Relations Commission and the Bank Commissioner.
In considering whether an employee, having an independent statutory or contractual cause of action for his or her grievance, must first invoke and exhaust administrative remedies before the Human Relations Commission, it is important to keep in mind that the Legislature has directed in Art. 49B, § 7(b), that private employees and state employees be treated alike with respect to "the rules, procedures, powers, rights and remedies which are applicable in ... a discrimination case...." There are clear indications that the Legislature did not intend that a state employee, having an independent cause of action for a discrimination grievance, must invoke and exhaust the administrative procedures before the Human Relations Commission.
When the employment discrimination provisions were enacted as part of Art. 49B of the Code, the Human Relations Commission (then called the Interracial Commission) was not given any jurisdiction over state employees. See Ch. 717 of the Acts of 1965. By Ch. 153 of the Acts of 1969, the Human Relations Commission was given the limited authority to submit a finding to the Governor with regard to a state employee's employment discrimination complaint. Nevertheless, the Commission was not empowered to provide any remedy; this was the province of the Governor. The Commission's extremely limited authority over state employee complaints continued until after the federal E.E.O.C. was granted jurisdiction over state employee discrimination complaints. As a result of the 1972 amendments to Title VII, making the federal statute applicable to state government employees, the Maryland Human Relations Commission began to seek legislation from the General Assembly "to conform the Maryland law to the 1972 amendments of Title VII of the Federal Civil Rights Act of 1964, so that we do not jeopardize our deferral status and grant privileges with the Equal Employment Opportunity Commission." Annual Report of the Maryland Commission on Human Relations, January, 1973, p. 3. Nevertheless, it was not until the enactment of Ch. 706 of the Acts of 1977 and Ch. 568 of the Acts of 1980, that the Commission was given authority over state employees somewhat equivalent to that of the E.E.O.C. under Title VII, including the authority to award back pay. The legislative history of the 1980 legislation demonstrates that the purpose was to conform the Commission's jurisdiction to that of the E.E.O.C., so that the state Commission would handle employment discrimination complaints in lieu of the federal agency.[11] In light of this statutory purpose, it is reasonable to infer that the General Assembly did not intend that the Commission's jurisdiction over state employee complaints be more extensive than the jurisdiction of the E.E.O.C. And, as held in Part II B of this opinion, the jurisdiction of the E.E.O.C. is not such as to preempt a state employee's statutory right under 42 U.S.C. § 1983.
Moreover, wholly separate and apart from proceedings before the Human Relations Commission, state employees are generally provided comprehensive and detailed administrative remedies for their grievances, including grievances that personnel actions were unlawfully discriminatory. Most state employees are afforded a multi-step administrative grievance procedure culminating in a hearing and decision by the Department of Personnel, which decision is then subject to judicial review. See Code (1957, 1983 Repl.Vol., 1985 Cum.Supp.), Art. 64A, §§ 12-12D, 12H-12I, 33, 36, 52-56. Some state employees are provided a comprehensive administrative and judicial review remedy for grievances by other statutory and regulatory provisions applicable to a single category of employees, such as the scheme discussed in Part II A of this opinion for employees of the Maryland-National Capital Park and Planning Commission. If we were to construe the pertinent statutes, as argued for in this case, to require that an employee such as the plaintiff Crawford invoke and exhaust every administrative scheme applicable to her grievance before bringing an independent judicial action authorized by statute, the burden upon such employee would be great. Moreover, the task of coordinating different judicial review actions and the independent statutory action could be formidable.[12]
It is noteworthy that the General Assembly, at one time and in one respect, did coordinate a state employee's administrative remedy for employment discrimination under Art. 64A, §§ 12A-12D, with his remedy before the Human Relations Commission under Art. 49B. By Ch. 706 of the Acts of 1977, the Legislature required that an employee exhaust "all available remedies" under Art. 64A, §§ 12A-12D, before the Human Relations Commission was empowered to act on the employee's complaint.[13] There was no converse requirement that the remedies before the Human Relations Commission be invoked and exhausted.
Employment discrimination cases in other jurisdictions, dealing with whether a statutory administrative remedy similar to that under Art. 49B of the Maryland Code is primary, are not very helpful, as the results generally depend upon the particular statutory language or history involved. Nevertheless, a majority of the cases seem to hold that the statutory administrative remedy before an agency comparable to the Maryland Human Relations Commission is not primary or becomes such only if the plaintiff initially elects such remedy. See, e.g., Pompey v. General Motors Corp., 385 Mich. 537, 559, 189 N.W.2d 243 (1971); Lloyd v. Stone Harbor, 179 N.J. Super. 496, 508, 432 A.2d 572 (1981); State Div. of Human Rights v. Com'r of N.Y., 57 A.D.2d 699, 395 N.Y.S.2d 774 (1977); Fye v. Central Transp. Inc. 487 Pa. 137, 140, 409 A.2d 2 (1979); Kurtz v. City of Waukesha, 91 Wis.2d 103, 280 N.W.2d 757, 764 (1979). But cf. Thakkar v. Wilson Enterprises, Inc., 120 Ill. App.3d 878, 881, 76 Ill.Dec. 331, 458 N.E.2d 985 (1983) (statute expressly negated other remedies).
For all of the above reasons, therefore, we hold that where an employee has a specific contractual or statutory cause of action for a claim of employment discrimination, independent of Art. 49B, Maryland law does not require that the employee, as a condition for maintaining the independent judicial action, first invoke the procedures before the Human Relations Commission.[14]

III.
Turning to the merits of Mrs. Crawford's claim, the Maryland-National Capital Park and Planning Commission and the individual defendants, in their brief and oral argument, broadly contend that there was a sufficient factual predicate for the Park and Planning Commission's so-called affirmative action plan (defendants' brief, p. 26) and that the plan was a legitimate affirmative action plan satisfying the criteria set forth in the case-law (id., pp. 26, 30, 43). The defendants say "that race-conscious programs of selection may be applied to redress the continuing effects of past discrimination where there are appropriate findings made by a judicial, legislative or administrative body" (id., p. 29). The defendants further state "that affirmative relief in the form of hiring quotas or goals is appropriate in order to rectify the past discriminatory hiring practices of public employers, notwithstanding that such remedies may result in some reverse discrimination" (id., p. 39). The greater part of the defendants' argument is devoted to analyzing various cases, in an effort to demonstrate that the Park and Planning Commission's affirmative action plan is constitutional under the principles set forth by the courts (id., pp. 27-43). Reliance is placed upon cases such as Fullilove v. Klutznick, 448 U.S. 448, 100 S.Ct. 2758, 65 L.Ed.2d 902 (1980); U.S. Steel Workers of America v. Weber, 443 U.S. 193, 99 S.Ct. 2721, 61 L.Ed.2d 480 (1979); University of California v. Bakke, 438 U.S. 265, 98 S.Ct. 2733, 57 L.Ed.2d 750 (1978); Setser v. Novack Investment Co., 657 F.2d 962 (8th Cir.1981); Parker v. Baltimore & Ohio Railroad, 652 F.2d 1012 (D.C. Cir.1981); Detroit Police Officers Association v. Young, 608 F.2d 671 (6th Cir.1979), cert. denied, 452 U.S. 938, 101 S.Ct. 3079, 69 L.Ed.2d 951 (1981). See, in addition, Firefighters v. Stotts, 467 U.S. 561, 104 S.Ct. 2576, 81 L.Ed.2d 483 (1984), and the recent opinions in Local 28 v. Equal Employment Opportunity Commission, ___ U.S. ___, 106 S.Ct. 3019, 92 L.Ed.2d 344 (1986); Local No. 93, International Association of Firefighters v. City of Cleveland, ___ U.S. ___, 106 S.Ct. 3063, 92 L.Ed.2d 405 (1986); and Wygant v. Jackson Bd. of Educ., ___ U.S. ___, 106 S.Ct. 1842, 90 L.Ed.2d 260 (1986).
We need not, and do not, reach any of these matters in this opinion. What the above-reviewed contentions overlook is that the circuit court found as a fact that the Park and Planning Commission failed to follow its so-called affirmative action plan in this case. The circuit court further found that the only reason Mrs. Crawford was not transferred was because of her race. Similarly, the Merit System Board had found that "[r]ace was a determining factor in the non-selection of" Mrs. Crawford. The Court of Special Appeals held that the findings of the circuit court were not clearly erroneous. See Maryland Rules 886 and 1086. In fact, in the Court of Special Appeals, counsel for the defendants conceded that unless the challenged personnel action was in accordance with the affirmative action plan, "there is no issue as to its legality. It will be agreed by the Appellants that it is illegal and unconstitutional." (Defendants' brief in Court of Special Appeals, p. 18). As we agree with the Court of Special Appeals that the circuit court's factual finding concerning non-compliance with the plan cannot be deemed "clearly erroneous," the constitutional issues concerning the validity of the plan are not presented for decision.
In determining whether a trial court's factual finding is "clearly erroneous" under Rule 886, we must "consider the evidence produced at trial in a light most favorable to the prevailing party, and if substantial evidence is present to support the trial court's determination, it is not clearly erroneous," Maryland Metals v. Metzner, 282 Md. 31, 41, 382 A.2d 564 (1978). The evidence supporting the circuit court's finding of non-compliance could not be deemed insubstantial.
The Park and Planning Commission's affirmative action plan was introduced, and it provided in § 11 as follows:
"A minority or woman shall be selected for any position in a `target' class unless another candidate is clearly superior to the minority or female applicant in skills or attributes essential for the position to be filled."
The plan also stated:
"All hiring, promotion practices and other terms and conditions of employment shall be maintained and conducted in a manner which does not discriminate on the basis of race, color, sex, religion or national origin in violation of Title VII of the Civil Rights Act of 1964, as amended."
Frances Hagye, a long time employee of the Park and Planning Commission, who had participated in interviewing Mrs. Crawford and other candidates for jobs, described the function of the interview panels. She testified that a panel was supposed to recommend the most qualified applicant. She also stated that the Commission could and did depart from the "one-for-one" hiring rule when a nonminority candidate was "most qualified" or "clearly superior." Counsel for the Park and Planning Commission elicited her testimony that the exception for clearly superior candidates was an integral part of the affirmative action plan. Frances Hagye also testified that Mrs. Crawford's experience in the work field and experience with the Commission made her clearly superior to the other candidates interviewed.
Leroy Hedgepeth, an employment relations manager at the Park and Planning Commission, testified that hiring officials did not apply the "one-for-one" hiring rule to a particular individual if "this person was ... clearly superior [to] any of the other members of the particular pool that they were being selected from." He defined "clearly superior" as follows: "A clearly superior candidate or applicant is one who is heads and shoulders above any other candidate in a particular pool to actually perform the particular position that was advertised, the other particular position that is vacant." Mr. Hedgepeth testified that "clear superiority" had to be justified and approved in writing by the department head, by his office and by the Executive Director. His testimony indicated that the Commission's pattern of hiring varied sharply from the "one-for-one" rule because of the "clearly superior" exception. Mr. Hedgepeth's testimony on these matters was in accord with the testimony of Thomas Countee, the Executive Director of the Commission.
Marye Wells, an associate director at the Commission, testified that she was under pressure from the Executive Director to appoint a minority person to the position for which Mrs. Crawford applied. Because of this pressure, she reviewed the basis for considering Mrs. Crawford "clearly superior." She stated that she considered re-advertising the position and also considered requesting a "clearly superior" exception. Instead, she decided to change the interview panel's designation of Mrs. Crawford as first choice and as clearly more qualified, and she recommended the second choice minority candidate. Marye Wells testified that she did this without making her own examination of the respective qualifications of the applicants.
Wells's testimony about pressure not to grant any more exceptions for "clearly superior" white people was confirmed by other evidence. The testimony of two witnesses and a document called "Executive Director's Concurrences/Non-Concurrences" indicated that the previous exception to the affirmative action plan had been made for the (white) daughter of the Director of Parks and Recreation, Mr. Robey, and had been conditioned on a commitment to fill the next vacancy with a black person. The document, which was part of the defendants' exhibit number one, contained the notation by the reference to the last person hired: "On condition next hire be black/minority."
Other evidence may have tended to support a finding that there was compliance with the plan. An untitled, unsigned and undated typewritten memorandum, apparently from someone employed by the Park and Planning Commission, which was introduced in evidence without objection, indicated that experience with the Commission was not essential and should have been disregarded by the interview panel. Also, the testimony of two officials of the Park and Planning Commission suggested that a finding of "clear superiority" was discretionary, was not to be made by the interview panel, but was to be made by higher authorities.
Nevertheless, in light of the wording of the plan, the testimony of the witnesses, and other documentary evidence, the circuit court's factual finding of noncompliance with the plan simply is not "clearly erroneous." This is dispositive of the second issue raised in the defendants' petition for a writ of certiorari.[15]

IV.
As previously discussed, this litigation involves two different awards of fees for plaintiff's counsel: (1) an award of $24,971.10 for work done through the trial stage, entered on June 22, 1983; (2) an award of $37,384.59 for work done in connection with the defendants' appeal to the Court of Special Appeals, entered on September 7, 1984.
In their brief in Case No. 110 before us, which is the certiorari review of the Court of Special Appeals' affirmance of the judgment entered on June 15, 1983, and appealed on the same date, the defendants argue that the $24,971.10 counsel fee award entered on June 22, 1983, was improper because it was made after the order of appeal was filed on June 15, 1983. The defendants urge that an award of counsel fees under 42 U.S.C. § 1988 should be made either before the appeal on the merits is filed or after the final termination of appellate proceedings. They rely on the asserted principle that the filing of an order of appeal divests the trial court of jurisdiction to proceed in the case, citing Lang v. Catterton, 267 Md. 268, 275, 297 A.2d 735 (1972), and earlier cases in this Court.
In their brief in Case No. 121, which is the appeal from the $37,384.59 award of attorneys' fees for the appellate proceedings, the defendants reiterate the argument that a counsel fee award under § 1988 should be made either before the filing of the appeal on the merits or after the termination of appellate proceedings. The defendants also argue that $37,384.59 was excessive in two respects.
We shall in Part A below deal with the challenge to the $24,971.10 award in Case No. 110; in Part B below we shall consider the arguments relating to the $37,384.59 award in Case No. 121.

A.
For two reasons, the defendants' attack in Case No. 110 upon the $24,971.10 fee award entered on June 22, 1983, is not properly before us.
1. Rule 813 a provides that, in cases decided by an intermediate appellate court, "this Court will ordinarily consider only the issues which have been raised in the petition and any cross petition for certiorari...." The defendants' petition for a writ of certiorari presented no issue concerning the counsel fee award. Other than a brief reference, in the "Statement of the Case" portion of the petition, to the fact that the trial court "awarded damages of $500.00 and attorney's fees of $24,971.10," there was utterly no mention of the counsel fee award. Because the matter was not raised in the petition, Rule 813 a precludes our consideration of the $24,971.10 award.[16]
2. There is an even more basic reason why the $24,971.10 fee award is not properly before us and why it was not properly before the Court of Special Appeals. As mentioned earlier in this opinion, no order of appeal was ever filed from the June 22, 1983, order awarding $24,971.10 in counsel fees. As pointed out in Joseph H. Munson Co. v. Sec. of State, 294 Md. 160, 168, 448 A.2d 935 (1982), aff'd., 467 U.S. 947, 104 S.Ct. 2839, 81 L.Ed.2d 786 (1984):
"A party to a trial court proceeding, however, is not entitled to seek direct appellate review and reversal of the trial court's judgment unless he has filed a valid, timely order of appeal. See, e.g., Pearlman v. State, 226 Md. 350, 173 A.2d 733 (1961); Riviere v. Quinlan, 210 Md. 76, 122 A.2d 332 (1956); Gaines v. Lamkin, 82 Md. 129, 33 A. 459 (1895); Hopper v. Jones, Adm'r, 64 Md. 578, 4 A. 273 (1886); Walter v. Second Nat'l Bank of Baltimore, 56 Md. 138 (1881); 2 Poe, Pleading and Practice §§ 823-824 (5th ed. H. Tiffany 1925); Maryland Rules 1010, 1011. The Secretary, not having filed an order of appeal, may not on appeal attack the trial court's declaratory judgment. Furthermore, the filing of a .. . petition for a writ of certiorari in this Court cannot overcome the failure of a purported ... appellant to have taken an appeal from the trial court's judgment."
The circuit court's final judgment in Case No. 110 was entered on June 15, 1983, and the order of appeal was filed later on June 15, 1983. Regardless of the legal relationship between the June 15th judgment on the merits and the June 22nd judgment for attorneys' fees, the lack of any order of appeal in the case on or after June 22nd absolutely precluded appellate review of the June 22nd order.[17]

B.
The defendants' challenge to the $37,384.59 attorneys' fee award is, however, properly before us. See Rule 813 b.
1. Initially, we disagree with the defendants' principal argument that a trial court should not consider an attorneys' fee petition under 42 U.S.C. § 1988 after an order of appeal is filed with respect to the merits of the case. In County Exec., Prince Geo's Co. v. Doe, supra, 300 Md. at 451 n. 4, 479 A.2d 352, we made it clear that a circuit court was authorized to make a counsel fee award under 42 U.S.C. § 1988 after the court had rendered a final judgment on the merits of the claim under 42 U.S.C. § 1983, saying that
"under 42 U.S.C., § 1988, a claim for an attorney's fee, while an integral part of the remedy under 42 U.S.C. § 1983, is viewed as a collateral matter from the § 1983 action; thus the claim for an attorney's fee may be brought following a final judgment in a § 1983 action. See Bernstein v. Menard, 728 F.2d 252 (4th Cir.1984); Gumbhir v. Kansas State Bd. of Pharmacy, 231 Kan. 507, 646 P.2d 1078, 1085-1086 (1982), cert. denied, 459 U.S. 1103, 103 S.Ct. 724, 74 L.Ed.2d 950 (1983). See also White v. New Hampshire Dept. of Employment Sec., 455 U.S. 445, 102 S.Ct. 1162, 71 L.Ed.2d 325 (1982)."
In White v. New Hampshire Dept. of Employment Sec., 455 U.S. 445, 102 S.Ct. 1162, 71 L.Ed.2d 325 (1982), cited by us in County Exec., the Court held that a petition for § 1988 attorney's fees should have been entertained despite the passing of four and a half months after entry of the final judgments on the merits. Cf., Sprague v. Ticonic Bank, 307 U.S. 161, 168, 59 S.Ct. 777, 780, 83 L.Ed. 1184 (1939), holding that trial courts are free to entertain petitions for attorney's fees while a petition for certiorari in the main case is pending before the Supreme Court.
The Park and Planning Commission relies heavily on Wright v. Jackson, 522 F.2d 955, 958 (4th Cir.1975), which held that a trial court "must" award attorneys' fees "while the merits are before it, either prior to an appeal or on remand after they have been settled."[18]Wright was decided before passage in 1976 of the Civil Rights Attorney's Fees Awards Act, 42 U.S.C. § 1988, and before the Supreme Court's decision in White v. New Hampshire Dept. of Employment Sec., supra. Moreover, other federal appellate courts have flatly rejected the Wright holding and have held that the trial court may consider fee petitions while a judgment on the merits is pending on appeal. Masolosalo v. Stonewall Ins. Co., 718 F.2d 955 (9th Cir.1983); West v. Keve, 721 F.2d 91, 95 (3d Cir.1983); Terket v. Lund, 623 F.2d 29, 34 (7th Cir.1980); Young v. Powell, 729 F.2d 563 (8th Cir.1984).
State courts which have considered the proper procedure for dealing with counsel fee awards have reached varied conclusions, but they generally take the position that trial courts may award fees despite the fact that an appeal has been taken from the judgment on the merits and is pending. See, e.g., Serrano v. Priest, 20 Cal.3d 25, 141 Cal. Rptr. 315, 569 P.2d 1303 (Cal. 1977); Welsh v. City of Orono, 355 N.W.2d 117 (Minn. 1984); Gumbhir v. Kansas State Bd. of Pharmacy, 231 Kan. 507, 646 P.2d 1078 (1982), cert. denied, 459 U.S. 1103, 103 S.Ct. 724, 74 L.Ed.2d 950 (1983). See also Dent v. Simmons, 61 Md. App. 122, 485 A.2d 270 (1985). The contrary view was taken in Trebilcox v. Brown & Bain, P.A., 133 Ariz. 588, 653 P.2d 45 (1982), and D'Elia v. Assoc. of Apt. Owners, 2 Hawaii App. 350, 632 P.2d 298 (1981).
We decline to adopt what is at best a minority rule. We hold that the circuit court in this case had discretion to award counsel fees under § 1988, in connection with the proceedings in the Court of Special Appeals, while the petition for a writ of certiorari was pending in this Court.
2. Before addressing the defendants' attack upon the amount of the $37,384.59 appellate fee award, it would be useful to set out briefly the basis for the award.
The fee petition requested $20,375.00 for 163 hours of time for the lead attorney, billed at $125.00 per hour and $6,506.25 for 86.75 hours of time for a law clerk billed at $75.00 per hour, which comes to a total of $26,881.25 for the basic counsel fee. The petition also requested $503.34 in costs. Finally, the plaintiff's attorneys sought a doubling of the basic fee and the costs, leading to a total request of $54,769.18. Time records, affidavits, and other documentary evidence were submitted to support the request. The trial judge awarded the basic fee requested and the costs in full; he added a $10,000 bonus instead of doubling the fee.
The trial court's reasons for awarding the bonus were (1) to make the return on cases such as this attractive to lawyers, (2) to compensate for the "irritation and frustration factor" of defending the judgment on appeal, (3) to compensate for deferred payment of the fees, and (4) to reward counsel "partly for the fact that this now, apparently, has become a matter of momentous importance and will continue to be litigated until every possible extremity has been reached...."
The defendants challenge the award in two respects. First, they argue that the award of a bonus was improper. Second, while not questioning the reasonableness of the hourly rates and not questioning that 249 3/4 hours were actually spent in connection with the appeal, they assert that the expenditure of this many hours was unreasonable.
We agree with the defendants concerning the $10,000 bonus. In Blum v. Stenson, 465 U.S. 886, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984), the Supreme court, inter alia, addressed the matter of a bonus added to the basic fee under § 1988. In Blum, legal aid lawyers won a class action suit brought on behalf of a statewide class of Medicaid recipients. The fee award included a requested 50% bonus to compensate for complexity, novelty and the scope of the benefit achieved. First, with regard to a bonus, the Blum opinion held that "[t]he burden of proving that such an adjustment is necessary to the determination of a reasonable fee is on the fee applicant." 465 U.S. at 898, 104 S.Ct. at 1548. With regard to the factors relied on by the trial court, the Supreme Court pointed out that "[t]he novelty and complexity of the issues presumably were fully reflected in the number of billable hours ... times reasonable hourly rates." Id. at 898, 104 S.Ct. at 1548. The Court also noted (id. at 899, 104 S.Ct. at 1549) that:
"The `quality of representation,' ... generally is reflected in the reasonable hourly rate. It, therefore, may justify an upward adjustment only in the rare case where the fee applicant offers specific evidence to show that the quality of service rendered was superior to that one reasonably should expect in light of the hourly rates charged and that the success was `exceptional.'"
With respect to "results obtained" as a basis for a bonus, the Court said: "Because acknowledgement of the `results obtained' generally will be subsumed within other factors used to calculate a reasonable fee, it normally should not provide an independent basis for increasing the fee award." Id. at 900, 104 S.Ct. at 1549. In a similar vein, the Court stated that an upward adjustment for the contingent nature of the litigation was unsupported. Id. at 901, 104 S.Ct. at 1550. The Supreme Court concluded in Blum that the applicant "has failed to carry her burden of justifying entitlement to an upward adjustment." Id. at 901-902, 104 S.Ct. at 1550.
Similarly, we hold that the fee applicant has not met the burden of justifying the bonus in the present case. Nothing in the record, in the trial court's opinion, or in counsel's argument, shows why the basic fee was insufficient to compensate fairly for the work done in connection with the appeal. The factors relied on by the circuit court here, like the factors relied on by the trial court in Blum, do not show that the bonus was warranted.
The circuit court first indicated that a reason for the bonus was to encourage lawyers to take cases like this. To the extent that this reason may be sound, it would seem to relate more to the trial court fee than the fee for defending a favorable judgment in the Court of Special Appeals. Moreover, the basic fees awarded so far in the case would clearly seem sufficient to encourage lawyers to take cases like this.
The second reason given by the circuit court for the bonus was to compensate for the "irritation and frustration" of defending the judgment on appeal. We have no idea why the defense of the judgment on appeal in this case would be more irritating and frustrating than the defense on appeal of any other judgment. Again, the basic fee for the appellate work would seem adequate to compensate counsel for having to defend the judgment on appeal.
The third factor cited by the circuit court to justify the bonus was the fact that payment of the basic fee would be deferred. In Hensley v. Eckerhart, 461 U.S. 424, 429-430, 103 S.Ct. 1933, 1937, 76 L.Ed.2d 40 (1983), the Supreme Court reviewed the legislative history of the Civil Rights Attorney's Fees Awards Act of 1976, 42 U.S.C. § 1988, and referred to twelve factors set forth in the House and Senate reports to be considered in determining the amount of the fee.[19] Deferred payment of the fee award is not listed as a relevant factor. Furthermore, the fee awards in the present case carried interest, and this would appear to be sufficient compensation for delay.
The fourth reason given by the circuit court for the bonus, namely the "momentous importance" of the case, is also not one of the twelve factors listed by the Supreme Court in Hensley v. Eckerhart, supra. In addition, we do not know what the circuit court meant by this or how it might justify a bonus.
As previously mentioned, the only challenge to the basic fee for defending the judgment in the Court of Special Appeals is the contention that the expenditure of 249 3/4 hours was unreasonable, and that, therefore, the defendants should not have been billed for this amount. With regard to the reasonableness of the amount of time expended and billed, the Supreme Court stated in Hensley v. Eckerhart, supra, as follows (461 U.S. at 434, 103 S.Ct. at 1939):
"The district court also should exclude from this initial fee calculation hours that were not `reasonably expended.' S.Rep. No. 94-1011, p. 6 (1976). Cases may be overstaffed, and the skill and experience of lawyers vary widely. Counsel for the prevailing party should make a good-faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary, just as a lawyer in private practice ethically is obligated to exclude such hours from his fee submission. `In the private sector, "billing judgment" is an important component in fee setting. It is no less important here. Hours that are not properly billed to one's client also are not properly billed to one's adversary pursuant to statutory authority.' Copeland v. Marshall, 205 U.S.App.D.C. 390, 401, 641 F.2d 880, 891 (1980) (en banc) (emphasis in original)."
Based upon our review of the briefs in the Court of Special Appeals and the time sheets, the expenditure of and billing for 249 3/4 hours seeme excessive. The circuit court, however, did not specifically deal with this matter. The court simply stated:
"We don't propose to go back and review the reasoning which we applied to the calculation of the original counsel fee. The only thing we say is that for purposes of calculating this additional fee on appeal we adopt roughly the same approach."
The circuit court should reconsider this issue in light of the guidelines quoted above from Hensley v. Eckerhart, supra.
Consequently, we shall vacate the $37,384.59 appellate counsel fee award and remand with instructions that the trial court redetermine a reasonable fee, without the bonus and with findings relating to the reasonableness of the number of hours spent in defending the judgment in the Court of Special Appeals. Any petition by the plaintiff's attorney for an additional fee award in connection with successfully defending the merits of the action in this Court, should be considered in light of the guidelines set forth in this opinion and by the Supreme Court in Blum v. Stenson, supra, and Hensley v. Eckerhart, supra, as well as the recent opinion in City of Riverside et al. v. Rivera et al., ___ U.S. ___, 106 S.Ct. 2686, 91 L.Ed.2d 466 (1986). See also Attorney Griev. Comm'n v. Wright, 306 Md. 93, 507 A.2d 618 (1986).
IN NO. 110, JUDGMENT OF THE COURT OF SPECIAL APPEALS AFFIRMED.
PETITIONERS TO PAY COSTS.
IN NO. 121, JUDGMENT OF THE CIRCUIT COURT FOR PRINCE GEORGE'S COUNTY VACATED, AND CASE REMANDED TO THAT COURT FOR FURTHER PROCEEDINGS NOT INCONSISTENT WITH THIS OPINION.
COSTS TO BE EQUALLY DIVIDED BETWEEN THE PETITIONERS AND RESPONDENT'S COUNSEL.
NOTES
[1] When Mrs. Crawford initially filed her grievance, she stated that she would file suit to vindicate her claim and requested that the Commission compress its normal grievance process "in view of the fact that one does not have to exhaust administrative remedies when a Constitutional claim is involved."
[2] That section provides as follows:

"(1) In any employment discrimination case in which an agency, officer or employee of the State of Maryland is a respondent, the rules, procedures, powers, rights, and remedies which are applicable in such a case shall be those which are applicable in a discrimination case in which a private person is the respondent."
See also Code (1957, 1983 Repl.Vol., 1985 Cum.Supp.), Art. 28, § 2-111.
[3] The defendants did not raise in the Court of Special Appeals the immunity contentions which had been made and rejected in the trial court. The defendants similarly have not raised those contentions in this Court. Consequently, the matter is not before us. See Maryland Rule 813.

It is true that, with respect to state law actions for damages against state agencies, counsel for the agency may not waive sovereign immunity unless the Legislature has authorized waiver, and this Court under appropriate circumstances will address the issue sua sponte. See, e.g., Tadjer v. Montgomery County, 300 Md. 539, 542 n. 1, 479 A.2d 1321 (1984); Bd. of Education v. Alcrymat Corp., 258 Md. 508, 516, 266 A.2d 349 (1970). The same rule does not appear to apply to immunity from suit under 42 U.S.C. § 1983, and some cases seem to indicate that such immunity can be waived unless asserted. See, e.g., Gomez v. Toledo, 446 U.S. 635, 639-641, 100 S.Ct. 1920, 1923-1924, 64 L.Ed.2d 572 (1980); Davidson v. Scully, 694 F.2d 50, 52 (2d Cir.1982); Robinson v. Bergstrom, 579 F.2d 401, 404 (7th Cir.1978); Tayyari v. New Mexico State University, 495 F. Supp. 1365, 1370 (D.N.Mex. 1980). See also the discussion in Patsy v. Florida Board of Regents, 457 U.S. 496, 515-516 n. 19, 102 S.Ct. 2557, 2567 n. 19, 73 L.Ed.2d 172 (1982) ("we have never held that [Eleventh Amendment immunity in a federal court § 1983 action] is jurisdictional in the sense that it must be raised and decided by this Court on its own motion"). Even if the question of § 1983 immunity would be addressed by a court sua sponte in an appropriate case, we would not view the present case as appropriate in light of the record and the lack of briefing and argument on the issue. Bd. of Education v. Alcrymat Corp., supra, 258 Md. at 516, 266 A.2d 349. See Patsy v. Florida Board of Regents, supra, 457 U.S. at 516 n. 19, 102 S.Ct. at 2567 n. 19.
[4] As these cases point out, however, there are exceptions to this general principle, both regarding initial invocation of the administrative remedy and regarding exhaustion. Bd. of Ed. for Dorchester Co. v. Hubbard, 305 Md. at 786, 506 A.2d 625; Wash. Sub. San. Comm. v. Mitchell & Best, 303 Md. at 560, 495 A.2d 30; Comm'n On Human Rel. v. Mass Transit, 294 Md. at 232, 449 A.2d 385; Prince George's County v. Blumberg, 288 Md. at 284-285, 418 A.2d 1155. See also, e.g., Harbor Island Marina v. Calvert County, 286 Md. 303, 308, 407 A.2d 738 (1979); White v. Prince George's County, 282 Md. 641, 649-650, 387 A.2d 260 (1978); Md-Nat'l Cap. P. & P. v. Wash. Nat'l Arena, 282 Md. 588, 594-604, 386 A.2d 1216 (1978).

Contrary to a suggestion in the defendants' brief, the requirement that administrative remedies must be exhausted is not ordinarily a limitation upon the subject matter jurisdiction of the trial court. But, because of the public policy underlying this requirement, it is for some purposes treated like a jurisdictional issue. Bd. of Ed. for Dorchester County v. Hubbard, supra, 305 Md. at 787, 506 A.2d 625; Comm'n on Human Rel. v. Mass Transit, supra, 294 Md. at 232, 449 A.2d 385.
[5] The need for exhausting administrative remedies, involving as it does a substantial legislative policy question, could not, we believe, be classified as "a mere `local rule of procedure'" which may be applied by state courts to federal causes of action. Dice v. Akron, C. & Y.R. Co., 342 U.S. 359, 363, 72 S.Ct. 312, 315, 96 L.Ed. 398 (1952), quoting Brown v. Western R. Co., 338 U.S. 294, 70 S.Ct. 105, 94 L.Ed. 100 (1949).
[6] The defendants rely solely upon the plaintiff's alleged failure to exhaust the administrative remedies provided by the Maryland-National Capital Park and Planning Commission; they do not in their brief rely upon any failure to pursue remedies afforded by the federal E.E.O.C. or the Maryland Human Relations Commission. The suggestion that the plaintiff should have exhausted remedies afforded by the latter two agencies was made only by the amici. As a general rule, we will not consider an issue raised by an amicus when no party to the case raises it. Nevertheless, because primary jurisdiction and exhaustion of administrative remedies are matters which the Court will address sue sponte in appropriate circumstances, they constitute exceptions to this general rule.
[7] The first step in pursuing Title VII remedies is to file a charge with the E.E.O.C., or one of its state and local counterparts. 42 U.S.C. § 2000e-5(b)-(c); 29 C.F.R. § 1601.6-1601.12. Under the statutory deferral procedure, initial charges are to be filed directly with approved state or local authorities, 42 U.S.C. § 2000e-5(c), or are to be forwarded there by the E.E.O.C. 29 C.F.R. § 1601.13, § 1601.77. The E.E.O.C. has certified the Maryland Commission on Human Relations as a deferral agency. 29 C.F.R. § 1601.80.
[8] It may be that Congress intended Federal courts to exercise exclusive jurisdiction over Title VII claims. The United States Court of Appeals for the Ninth Circuit recently took this view, Valenzuela v. Kraft, Inc., 739 F.2d 434, 435-436 (9th Cir.1984), but the Supreme Court has not decided the point, Kremer v. Chemical Construction Corp., 456 U.S. 461, 479 n. 20, 102 S.Ct. 1883, 1896 n. 20, 72 L.Ed.2d 262 (1982), and other courts have taken the position that Congress intended that federal and state courts share concurrent jurisdiction. See Valenzuela v. Kraft, Inc., supra, 739 F.2d at 435 n. 1 (collecting and comparing cases).
[9] A contrary, and distinct minority, view appears to have been adopted by the United States District Court for the District of Maryland in Weide v. Mass Transit Administration, 628 F. Supp. 247 (D.Md., 1985), and followed in Keller v. Prince George's County Dept., 616 F. Supp. 540 (D.Md. 1985). Neither the Weide nor the Keller opinions mentioned the legislative history of the Equal Employment Opportunity Act of 1972. Furthermore, both opinions relied on Great Am. Federal S & L Ass'n v. Novotny, 442 U.S. 366, 99 S.Ct. 2345, 60 L.Ed.2d 957 (1979). Novotny, however, involved solely "rights created by Title VII" (442 U.S. at 376-377, 99 S.Ct. at 2351), and the Court "conclude[d] that [42 U.S.C.] § 1985(3) may not be invoked to redress violations of Title VII." Id. at 378, 99 S.Ct. at 2352. The Court in Novotny specifically distinguished cases where actions were brought to vindicate employment rights having a basis "independent" of Title VII, indicating that such actions may be maintained notwithstanding Title VII. Id. at 377-378, 99 S.Ct. at 2351-2352. In the instant case, a substantive basis for the plaintiff Crawford's employment discrimination claim is the Equal Protection Clause of the Fourteenth Amendment. Finally, the Court in Novotny specifically pointed to the legislative history of the 1972 amendments to Title VII, stating that the view was expressed that 42 U.S.C. §§ 1981 and 1983 "would not be implicitly repealed" by Title VII, "but, significantly, no notice appears to have been taken of § 1985." Id. at 377 n. 21, 99 S.Ct. at 2351 n. 21.
[10] We would agree, however, that where a plaintiff's claim is grounded entirely upon the provisions of Art. 49B, the Human Relations Commission has primary jurisdiction, and the plaintiff ordinarily must invoke and exhaust his administrative remedy before maintaining an action in court. Cf. Dillon v. Great Atl. & Pac. Tea Co., 43 Md. App. 161, 403 A.2d 406 (1979).
[11] See the file of the Department of Legislative Reference on S.B. 624, which became Ch. 568 of the Acts of 1980. A letter from the Commission to one of the legislative committees points out as follows:

"On the question of the legality, propriety or practicality of an award of monetary relief against a State agency, should discrimination be found pursuant to a complaint by one of its employees, we suggested that such relief would be granted if that employee sought the remedies provided under federal law (Title VII of the 1964 Civil Rights Act, codified as 43 U.S.C. 2000e et. seq., as amended, 1972) by filing his or her complaint with the U.S. Equal Employment Opportunity Commission. If the complainant in such a case were successful, either through conciliation at the administrative level or through federal court action, the State could not elect whether or not to pay the successful litigant. Under existing case law (Fitzpatrick v. Bitzer, 427 U.S. 445, 96 S.Ct. 2666 [49 L.Ed.2d 614] (1976)), liability could not be avoided. A copy of the Supreme Court's decision in Fitzpatrick is attached for your convenience.
"The result of the State's attempting to avoid liability under its own statute would be to virtually force the aggrieved state employee to seek the federal remedy. This effectively defeats the public policy of having the states deal first with these issues  a very important component of the entire body of civil rights law."
A Human Relations Commission official testified that if the legislation passed, more of the complaints would be handled by the state agency and less by the E.E.O.C.
[12] As discussed in Part II A of this opinion, the Legislature created a personnel and grievance system for Park and Planning Commission employees which is separate and distinct from the system applicable to state government employees generally, and the Legislature directed the Park and Planning Commission to adopt "comprehensive rules and regulations governing" the system. One of the regulations pursuant to the statutory direction is that an employee "may appeal the [Merit] Board's decision to a court of competent jurisdiction." It would make little sense to hold that, while an employee can file an action directly in court seeking judicial review of the Merit Board's decision, he may not combine such suit with an independent judicial or contractual cause of action because of the failure to file a complaint with the Human Relations Commission.
[13] This requirement was later modified by Ch. 568 of the Acts of 1980, and then deleted by Ch. 376 of the Acts of 1983.
[14] It should be emphasized that this holding relates solely to the maintenance of a specific judicial remedy for the claim, which remedy is based on a contractual right or a statute (whether federal or state) like § 1983. Our holding does not authorize a plaintiff to bypass the Human Relations Commission's procedures by bringing a declaratory judgment action or invoking the general equity power of a court.

Moreover, where a plaintiff having an independent judicial remedy also elects to file a claim with the Commission on Human Relations, a court should require that the plaintiff exhaust his Commission remedies before the court addresses the merits of the independent action.
[15] The defendants in their brief do attempt to raise another issue relating to the merits. As earlier mentioned, the circuit court found that the defendants did not act with malice and declined to award punitive damages. Misconstruing this as a finding that "there was no discriminatory intent," the defendants argue that the type of relief given, including attorney's fees, was inappropriate. (Defendant's brief, pp. 45-47). This issue was not presented in the defendants' petition for a writ of certiorari and, therefore, is not before us. Rule 813a. See also Part IV A of this opinion, infra.
[16] There is an exception to Rule 813a where a court below lacked jurisdiction to render an order. Nevertheless, the principle that a trial court should not take certain types of actions after an order of appeal has been filed in a case does not mean that the trial court ordinarily lacks jurisdiction to do so. See the discussion in Pulley v. State, 287 Md. 406, 414-419, 412 A.2d 1244 (1980).
[17] As to the relationship between the two judgments, it should be noted that the June 22nd order could not properly be viewed as a revision of the June 15th order. Once the order of appeal was filed from the June 15th judgment, it was not subject to revision under the first sentence of former Rule 625a, which was then in effect. See the discussion in Unnamed Atty. v. Attorney Griev. Comm'n, 303 Md. 473, 484-486, 494 A.2d 940 (1985). See also Yarema v. Exxon Corp., 305 Md. 219, 240-241, 503 A.2d 239. (1986). Nevertheless, even if the June 22nd order could be viewed as a revision of the June 15th judgment, the result would be that the June 15th order of appeal would be deemed premature; the early order of appeal would still not confer appellate jurisdiction to review the later June 22nd order. See, e.g., Eastgate Associates v. Apper, 276 Md. 698, 701, 350 A.2d 661 (1976); Merlands Club, Inc. v. Messall, 238 Md. 359, 208 A.2d 687 (1965).
[18] To the extent that Wright is based upon the Fourth Circuit's view of the trial court's basic jurisdiction, and some language in the opinion suggests that it is so based, the holding would not be applicable to a Maryland circuit court. See Pulley v. State, supra, 287 Md. at 414-419, 412 A.2d 1244.
[19] The Court in Hensley stated (461 U.S. at 430 n. 3, 103 S.Ct. at 1937 n. 3):

"The 12 factors are: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the `undesirability' of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. .. . These factors derive directly from the American Bar Association Code of Professional Responsibility, Disciplinary Rule 2-106 (1980)."