SPINTMAN, ET AL. *v.* THE CHESAPEAKE AND
POTOMAC TELEPHONE COMPANY
OF MARYLAND

[No. 330, September Term, 1968.]

*Decided July 1, 1969.*

424

■■■■■■■■■■■■

■■■■■■■■■■■■

■■■■■■■

The cause was argued before HAMMOND, C. J., and MARBURY, BARNES, FINAN and SMITH, JJ.

*Daniel I. Sherry* for appellants.

*Robert A. Levetown,* with whom were *Jerrold V. Powers, Sasscer, Clagett, Powers & Channing, Howard C. Anderson* and *L. Manning Muntzing* on the brief, for appellee.

FINAN, J., delivered the opinion of the Court.

Daniel A. Spintman and Judith A. Spintman, his wife (appellants), are subscribers to the "262" exchange service of the appellee, Chesapeake and Potomac Telephone Company of Maryland. Appellants brought an action in assumpsit for themselves, and on behalf of all other similarly situated subscribers to the "262" exchange service in the City of Bowie, and other areas in Prince George's County, Maryland, that are not within the area designated for telephone rate services as the "Washington, D. C. Metropolitan Exchange Area" (D. C. Area). The first count of appellant's declaration claims reimbursement for money paid for telephone services at rates that include mileage and other charges which are not included in the rates charged by the appellee for similar services to subscribers within the "D. C. Area," to the extent of such mileage and other charges. Appellants allege that they are under substantially similar circumstances as those persons who subscribe to the appellee's service within the "D. C. Area," who do not pay such mileage and other charges and that the mileage and other charges applied to appellants are unjustly discriminatory charges for like services under like conditions.

The second count of appellants' declaration claims

money paid for telephone service at rates in excess of just and reasonable rates, resulting in excessive compensation to the appellee, and demands reparations to the extent of such excessive compensation in the amount of $2,500,000.00.

The appellee demurred to the appellants' declaration and filed a memorandum in support of its demurrer. The appellee asserted in its memorandum that: (1) complaints that utility rates are unreasonable or discriminatory must be addressed to the Public Service Commission; (2) standards for Commission determination of rates, which are set forth in the Public Service Commission Law (Code (1965 Repl. Vol.) Art. 78, Sections 1-107), do not create private causes of action; (3) the appellants cannot invoke any common law right of reparations; and (4) there is no injustice in barring suits for reparations where tariff rates have been charged. Appellants filed a memorandum in opposition to the appellee's demurrer setting forth a number of reasons why the demurrer should not be granted. After hearing argument, the lower court sustained the appellee's demurrer without leave to amend, adopting as its opinion the memorandum, points and authorities in support of appellee's demurrer and the oral argument of the appellee. This appeal on behalf of the appellants followed.

We are presented with the question of whether telephone subscribers who have accepted, used, and paid for telephone service, on terms not alleged to be different from those stipulated in tariffs on file with the Public Service Commission, can attack those tariff rates retroactively and demand refunds in an original court proceeding allegedly based on common law rights.

For the reasons which will hereinafter follow we are of the opinion that the lower court was correct in sustaining the appellee's demurrer without leave to amend.

The appellants rely heavily upon the case of *Lewis v. Mayor & City Council of Cumberland*, 189 Md. 58, 54 A. 2d 319 (1947). However, we think the rationale of the

Court in *Lewis* amply demonstrates why, in our opinion, there is no common law remedy available to the appellants on which they may predicate their right to reparations, assuming, *arguendo,* that the rates charged by the appellee were unjustifiable. In the *Lewis* case, an apartment house water consumer challenged a rate established by city ordinance incident to the City of Cumberland's operation of a municipal water company. The lower court invoking common law principles, determined that the rate charged was reasonable and that the classification applicable to the consumer was not discriminatory. This Court in affirming the lower court, emphasized that the common law principle, which forbade excessive or discriminatory rates for services of public utilities, was applied in this case and that the Court could directly do so, only because the regulatory powers of the Public Service Commission of Maryland did not apply to a municipal water company in Allegany County.[1] Code (1943 Supp.), Art. 23, Sec. 414. In fact there is the strongest implication in the Court's opinion that had the rate making powers of the Public Service Commission applied to a municipal water company, the Court would not have directly entertained a review of the rate. Judge Markell, later Chief Judge, writing for the Court stated:

> "The common law, like present day statutes, required that public utility rates be reasonable, but delegated no power to determine for the future what is reasonable. * * * *In the absence of direct or delegated legislative regulation of rates,* the courts must determine what is reasonable, in a suit by the utility to collect compensation or a suit by the customer to recover excessive compensation extracted from him. * * *." *Id.* at 67. (Emphasis supplied)

1. A municipal water company situated in Allegany County is still expressly exempt from the rate making powers and jurisdiction of the Public Service Commission. Code (1965 Repl. Vol.) Art. 78, Sec. 55.

The Public Service Commission of Maryland was established by Chapter 180 of the Acts of 1910, and by it the legislature created comprehensive and detailed administrative machinery for the regulation of public utilities throughout the State. We think beyond question that where the legislature expressly provided for the regulation of a public utility by a quasi-legislative body, such as the Public Service Commission, that to the extent that the Commission was endowed with general regulatory powers over a public utility, any private right vested in a consumer by virtue of the common law, to have the reasonableness of a rate determined originally by a court, was abrogated. We do not think it necessary to go into the question of legislative pre-emption of the field by occupation, as we did in the recent case of *Mayor and City Council of Baltimore v. Sitnick,* 254 Md. 303, 255 A. 2d 376 (1969), because in the instant case, which is not a suit for a declaratory judgment, we are confronted with the narrow issue of whether under the facts of this case the common law right of a private consumer to challenge the rate of a public utility survives. It may well be that remedies available at common law to be invoked by a consumer against a utility, or for that matter, the power of a local subdivision to enact some regulatory control, may still exist in the same areas of regulation. *Lutz v. State,* 167 Md. 12, 15, 172 A. 354 (1934) ; *Hooper v. Baltimore,* 12 Md. 464, 475 (1859). For example, municipal water companies in Allegany County are still exempted from regulation by the Commission by Section 55 of Article 78, and the Commission does not establish rates for any municipal water company for service to consumers within the corporate boundary of the municipality. *Hagerstown v. Public Serv. Comm.,* 217 Md. 101, 106, 141 A. 2d 699 (1958) ; and it would further appear that the Commission has not endeavored to establish rules and regulations for taxicab companies in incorporated cities or towns of less than 50,000 population, except Cumberland and Hagerstown. Article 78, Section 45 (1968 Cum. Supp.). However, in the instant case, and what is of con-

cern to us, the language of the statute makes it clear and unmistakable that the legislature intended that the Public Service Commission should have authority to regulate the rates of a public utility such as the Chesapeake & Potomac Telephone Company. Article 78, Sections 1 and 2. .

The appellants contend that the court may well determine that a rate is discriminatory or produces excessive revenues and grant a retroactive refund to correct this injustice, without in fact, engaging in the function of rate making. This is a spurious argument which advocates that a court may do by indirection that which it is not permitted to do directly.

Where an administrative remedy is available, such as a hearing before the Public Service Commission, to determine the reasonableness of a rate, prior resort to that remedy is a necessary prerequisite to a standing before the courts. *Poe v. Baltimore City*, 241 Md. 303, 311, 216 A. 2d 707 (1966) ; *Gager v. Kasdon*, 234 Md. 7, 9, 10, 197 A. 2d 837 (1964), appeal dismissed, 379 U. S. 13 (1964) ; *Shpak v. Mytych*, 231 Md. 414, 417, 418, 190 A. 2d 777 (1963).

If we were to follow the argument advanced by the appellants to its logical conclusion, we would witness the chaotic situation where juries would be performing the rate making function of the Public Service Commission by having a veto power over rates. Certainly, such would be the ultimate and practical effect of their action if they were to be allowed to render a verdict for reparation in favor of the plaintiff consumer in an action of assumpsit.

Public utilities are sometimes locally situated and may, on occasions, serve consumers only within the boundary of a political subdivision; but more frequently public utilities have a rate base spread over many political subdivisions, often state-wide in scope and its rates may be, and usually are, applicable to consumers residing in more than one political subdivision. The function of rate making for the purpose of determining what may be a rea-

sonable return on the utilities' investment, as well as the determination of a fair rate base upon which the return may be computed, involves a highly technical and complicated process calling for an expertise which frequently taxes the experience and knowledge of the members of the Public Service Commission, as well as the court which may be called upon to review an established rate on appeal. The soundness of having such matters originally determined by a commission of persons qualified to evaluate the issues in a specialized field lies beyond dispute. Cf. *Poe v. Baltimore City, supra. Id.* at 307. See also 2 Md. L. Rev. 185, at 208, "Administrative Law In Maryland" by Hon. Reuben Oppenheimer.

In the instant case, we are not confronted with a situation where the consumer was charged a rate not in conformity with the established and published tariff set by the Commission or where there was error in the computation or application of the established rate. In such a situation an action in assumpsit may well be the proper remedy for the collection of an overcharge, but here the consumers were charged the approved tariff which they now strive to have declared discriminatory and unreasonable by a collateral attack on the decision of the Commission in establishing the rate. The appellants minimize the nature of this collateral attack by emphasizing that it is necessary in order to support their claim for reparation.

The appellants could have availed themselves of their day in court. The statute provides that all rates for utility service must be filed with the Commission; that such rates may become effective following 30 days notice to the Commission and the public; and that thereafter, only such rates may be charged. Whenever a new rate is filed with the Commission, the Commission may suspend the effectiveness of the proposed rate for a period up to 150 days while it considers the reasonableness of the rate. Code, Art. 78, Sections 27, 28 and 70.

The statute further provides, that if any consumer

430

complains that a rate is either unreasonable or discriminatory and the complaint is "deemed to be deserving of explanation," the Commission shall institute a proceeding to investigate the complaint and the Commission shall direct such relief as may be warranted. The Commission also has the authority to commence investigation on its own motion, to determine just and reasonable rates by order, to fix temporary rates, and to order refunds in certain situations defined by the statute. Code, Article 78, Sections 68, 70, 71 and 77.

The statute finally provides that orders and decisions of the Public Service Commission involving rates and other matters may be appealed to the courts by any party or any person in interest. Code, Article 78, Sections 90 and 98.

Rate making must necessarily be predictive in nature as it involves the legislative process of making a rule for the future. *Baltimore Gas and Electric Company v. McQuaid,* 220 Md. 373, 383, 152 A. 2d 825 (1959).

The Public Service Commission Law does provide for those situations where a rate becomes operative prior to a final determination of its fairness. In such a situation the statute provides:

"* * * If a proposed new rate or change of rate effecting an increase goes into effect before a final order is entered in the said proceedings, the Commission may, where practicable, order the proponent to keep a detailed and accurate account of all amounts received by reason of such new rate or increase, and the persons on whose behalf such amounts are paid, and after the conclusion of said proceedings, require the proponent to refund, with interest, to every such person, such part of the new or the increased rates as the Commission finds unjustified. If such refund is not practicable, the company shall charge off and amortize, by means of a temporary decrease, to be fixed by the Commission,

below the rates as finally determined, for such period as the Commission may determine, the difference between the operating revenues under the rates charge [charged] and the operating revenues that would have been obtained from the same volume of business from the rates as finally determined." Article 78, Section 70 (c).

In the case at bar, the Public Service Commission during the year 1964 reviewed the rates now under attack. No appeal was taken from the decision of the Public Service Commission by the plaintiff or other telephone subscribers in the Bowie area. Now, several years later they are demanding a determination of whether they should receive a $2,500,000.00 rebate. If such actions were allowed by this Court, serious attempts at reasonable rate making would prove farcical. The utility company would, in such event, never be able to project what should be a reasonable rate because they would have little knowledge of what contingent liabilities may be lurking in the future by way of rebates awarded by juries to dissatisfied customers. In the end we think this would militate to the disservice of the consumer.

The appellants readily agree that the ruling they are requesting would be an innovation in the public utility law of this State, and the only authority which approaches support for their proposition is the dissenting opinion in the Supreme Court case of *Montana-Dakota Utilities v. Northwestern Public Service Company,* 341 U. S. 246 (1951). In that case even the dissenting opinion recognized that the court did not have original jurisdiction to establish utility rates and proposed that upon remand to the District Court that it should stay the proceedings and request the Federal Power Commission, ("a matter within the Commission's special competence.") to determine what should have been the reasonable rate, which would be "only a preliminary interim step towards final judgment, * * *." *Id.* at 265.

In *Montana* both litigants were public utilities under

the same management through interlocking directorships. Montana sued on an inter-company contract covering shared expenses and interchange of electric energy, and in addition to alleging unreasonable charges paid to it and exacted from it, the suit also alleged fraud. Mr. Justice Jackson writing the majority opinion in affirming the judgment of the Circuit Court of Appeals which dismissed the suit stated:

"* * * It is admitted, however, that a utility could not institute a suit in a federal court to recover a portion of past rates which it simply alleges were unreasonable. It would be out of court for failure to exhaust administrative remedies, for, at any time in the past, it could have applied for and secured a review and, perhaps, a reduction of the rates by the Commission.

\* \* \*

"We hold that the right to a reasonable rate is the right to the rate which the Commission files or fixes and that, except for review of the Commission's orders, the courts can assume no right to a different one on the ground that, in its opinion, it is the only or the more reasonable one." *Id.* at 250-251.

The appellants also endeavor to base their right of action on the language found in Article 78, Section 103, which reads:

"In any action by any public service company for the collection of any charge, no recovery shall be had if in the transaction on which suit is brought, the company has demanded a rate in excess of that which is lawful under this article at the time."

Their argument is based on the erroneous and gratuitous assumption that the rate charged by the appellee was an unlawful rate within the meaning of Section 103. Ac-

tually, the rate charged was the lawful tariff established by the Commission, and pursuant to Article 78, Section 27(a) (2), it would have been unlawful for the utility to have imposed any charge other than that specified in the tariffs filed with the Commission.

In like manner we think the appellants have misinterpreted 49 U.S.C. § 908 of the Interstate Commerce Act, which although not pertinent to the case at bar, they cite to demonstrate that the Interstate Commerce Act provides for reparations where excessive rates have been charged and that the failure of the Public Service Commission Law of Maryland to so provide, creates a vacuum into which the court should move by the imposition of a common law remedy. As we read 49 U.S.C. § 908, although it is titled under the general heading of "Reparation awards; limitation of action," all that Section 908 provides for is the recovery of overcharges, and in Section 908 (f) (4), it defines "overcharges" as follows:

"(4) The term "overcharges" as used in this section means *charges* for transportation services *in excess of those* applicable thereto under the *tariffs lawfully on file with the Commission*." (Emphasis supplied.)

Again, we call attention to the obvious fact that in the instant case the challenged rates are those which have been established by the Commission.

We are not persuaded by the novel argument advanced by the appellants and finding that their declaration fails to state a cause of action, we affirm the action of the lower court in sustaining the appellee's demurrer, without leave to amend.

*Order affirmed, appellants to pay costs.*